**SO ORDERED.**

**SIGNED this 24 day of February, 2012.**

_____
Randy D. Doub
United States Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

| | |
|---|---|
| **HUBERT CARTER,** | **CHAPTER 7** |
| **RITA F. CARTER,** | **CASE NUMBER: 10-10459-8-RDD** |
| **DEBTORS** | |

| | |
|---|---|
| **HUBERT CARTER,** | **ADVERSARY PROCEEDING** |
|  | **NUMBER: 11-00069-8-RDD** |
| **Plaintiff** | |
| v. | |
| **B-LINE, LLC,** | |
| **Defendant** | |

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT;
AND (2) ALLOWING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is the Motion for Summary Judgment and the accompanying Memorandum of Law filed by Hubert Carter (the "Plaintiff") on November 30, 2011 and the Motion for Summary Judgment and the accompanying memorandum of law filed by B-Line, LLC (the

"Defendant") on November 30, 2011. The Court conducted a hearing on January 26, 2012 in Wilson, North Carolina to consider the motions.

## JURISDICTION

Subject matter jurisdiction and jurisdiction over the parties exists pursuant to 28 U.S.C. §§ 151, 157, and 1334, and the General Order of Reference of the United States District Court for the Eastern District of North Carolina dated August 3, 1984.

This matter is a core proceeding as set forth in Section 157(b)(2) of Title 28 of the United States Code.

## STANDARD FOR SUMMARY JUDGMENT

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). If there is no genuine issue of material fact, and the issue to be decided is a matter of law, a ruling on a motion for summary judgment is appropriate. However, if there are genuine issues of material fact, then summary judgment is not appropriate.

## FACTUAL HISTORY

The Plaintiff and his joint debtor spouse filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code (the "Code") on December 22, 2010. Schedule F showed an unsecured debt to Kay Jewelers in the amount of $860.61. Prior to the Plaintiff filing for relief under Chapter 7, the Plaintiff had a charge account with Kay Jewelers with an open balance on the account.

2

Kay Jewelers maintains its own branded charge accounts through Sterling Jewelers, Inc. doing business as Kay Jewelers. The Plaintiff's account with Kay Jewelers was delinquent at the time the bankruptcy petition was filed.

The Plaintiff, along with his joint debtor spouse, attended the Section 341 Creditors Meeting on January 19, 2011. Stephen L. Beaman was duly appointed as the Chapter 7 Trustee (the "Trustee"). The Trustee determined that there was no property available for distribution for the estate over and above that exempted by law.

The Defendant, is a limited liability company organized and existing under the laws of the State of Washington. The Defendant is engaged in the business of purchasing and servicing consumer bankruptcy accounts. Once the Defendant purchases said consumer bankruptcy accounts, it files proofs of claims, files transfers of claims, prepares reaffirmation packages on court approved bankruptcy forms and undertakes a variety of other actions pursuant to the Bankruptcy Code and rules depending on the requirements of each case. The Defendant does not attempt to collect debts by filing lawsuits in state court or operating a telephone call center or by sending out letters demanding payment to obligors on the purchased accounts. The Defendant has appeared in numerous bankruptcy cases across the country including the Eastern District of North Carolina.

On December 30, 2010, the Defendant purchased the account that Plaintiff maintained with Sterling Jewelers, Inc. The Defendant faxed a proposed reaffirmation agreement to Plaintiff's counsel dated February 7, 2011. The agreement asserted that the Defendant was the owner of the account and claimed the obligation was a secured debt. The correspondence stated that the Defendant would like to "know you/your client'(s) intentions with respect to the collateral for the above entitled account. If the Jewelry purchased under this secured account have been destroyed, gifted or transferred, or sold, [the Defendant] may have a non-dischargeability cause of action against you/your client(s) under 11

3

U.S.C. § 523." Plaintiff's counsel forwarded the reaffirmation agreement to the Plaintiff. At the time the Defendant submitted the reaffirmation agreement to the Plaintiff, the Defendant was not licensed as a "collection agency" by the North Carolina Department of Insurance.

The Plaintiff initiated this adversary proceeding against the Defendant on February 22, 2011. Plaintiff seeks in his complaint to recover from the Defendant actual damages and statutory damages. Plaintiff asserts that the Defendant violated N.C. Gen. Stat. § 58-70-1 because it carried on a "collection agency business" without securing a permit through the Commissioner of Insurance before it solicited a reaffirmation agreement. Additionally, Plaintiff alleges that the Defendant's solicitation of a reaffirmation agreement in the Plaintiff's bankruptcy case is an attempt to collect a debt by the use of unfair practices "within the meaning of North Carolina General Statute § 75-1.1." The Plaintiff seeks to recover actual damages as proven at trial and statutory damages of no less than $500.00 up to a maximum of $4,000.00 for each violation of N.C. Gen. Stat. § 58-70.

In its Answer, the Defendant contends that the Plaintiff fails to state a claim upon which relief may be granted because sending a reaffirmation agreement is authorized by the Bankruptcy Code, bankruptcy case law, and the official bankruptcy forms, and therefore supersedes all state licensing laws and consumer protection laws. Additionally, the Defendant contends the Plaintiff fails to state a claim, as sending a reaffirmation agreement is not an "attempt to collect a debt" which would be prohibited under 11 U.S.C. § 362.

On November 30, 2011, both the Plaintiff and the Defendant filed Motions for Summary Judgment. The Plaintiff contends the undisputed facts in this case show that the Defendant is a "collection agency" that must be licensed in North Carolina before it may attempt to solicit reaffirmation agreements in bankruptcy cases. By engaging in the collection of debts without being licensed, the Defendant was engaging in an unfair practice in violation of North Carolina General

Statute § 58-70-115. Plaintiff argues he is entitled to recover statutory damages, actual damages and attorney's fees.

In its Motion for Summary Judgment the Defendant contends that the Plaintiff's claims fail as a matter of law because federal law, not state law, governs debt collection reaffirmation agreements, and even if state law did apply, reaffirmation agreements are not an "attempt to collect a debt."

## DISCUSSION

The Court finds the Defendant's solicitation of the reaffirmation agreement in the Plaintiff's bankruptcy proceeding was not an attempt to collect a debt in violation of North Carolina General Statute § 58-70-1. Section 58-70-1 provides "collection agencies in North Carolina must obtain a permit before engaging in debt collection activities and must display the permit number on all correspondence with debtors." *Hartman v. Meridian Fin. Services*, 2001 WL 1823617 at *1 (W.D. Wis. Aug. 28, 2001). In relevant part, North Carolina General Statute § 58-70-1 states:

> [n]o person, firm, corporation, or association shall conduct or operate a collection agency or do a collection agency business, as the same is hereinafter defined in this Article, until he or it shall have secured a permit therefor as provided in this Article.

N.C. Gen. Stat. § 58-70-1.

A "collection agency" is defined as:

> a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims.

N.C. Gen. Stat. § 58-70-15(a).

Included within the definition of "collection agency" is a "debt buyer" which is defined as:

5

>a person or entity that is engaged in the business of purchasing delinquent or charged-off consumer loans or consumer credit accounts, or other delinquent consumer debt for collection purposes, whether it collects the debt itself or hires a third party for collection or an attorney-at-law for litigation in order to collect such debt.

N.C. Gen. Stat. § 58-70-15(b)(4).

In *Jenkins v. Genesis Fin. Solutions* (*In re Jenkins)*, 456 B.R. 236 at 238 (Bankr.E.D.N.C. Sept. 19, 2011), the Bankruptcy Court discussed whether filing proofs of claim constitute collection activity within the meaning of North Carolina General Statute § 58-70-115, which prohibits collection agencies from collecting or attempting "to collect any debt by the use of any unfair practices." The Court determined that a creditor's filing a proof of claim in a bankruptcy case did not constitute an effort to "'collect" within the meaning of North Carolina's statutes." *Id.* at 239-40. The Court explained "[t]he debt collection activities the State of North Carolina seeks to curtail have virtually nothing in common with the filing of a proof of claim in bankruptcy court." *Id.* at 240. Further, the Court explained: "[i]f filing a proof of claim constituted a 'collection' activity, then filing proofs of claim under § 502(b) would be fundamentally at odds with language in § 362(a)(6) providing that the filing of a petition 'operates as a stay, applicable to all entities, of . . . any act to *collect*, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *Id.* (emphasis in orginal).

The Sixth Circuit ruled that soliciting a "reaffirmation agreement" does not violate the automatic stay provisions of 11 U.S.C. § 362. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000). The Sixth Circuit explained that the automatic stay provisions of 11 U.S.C. § 362(a), preclude creditors from "seeking to obtain property of the estate or from assessing or collecting on a pre-petition claim against the debtor." *Id.* Reading § 362(a) as prohibiting contacts regarding

6

reaffirmation agreements, would "undermine § 524(c), which permits reaffirmation agreements." *Id.* (citing *In re Duke*, 79 F.3d 43, 45 (7th Cir. 1996); *In re Briggs*, 143 B.R. 438, 450-51 (Bankr. E.D. Mich. 1992)). "Something more than mere contact must be alleged in order to state a claim under § 362." *Id.*

The Seventh Circuit held that "[p]rovided there is no coercion or harassment of the debtor, the creditor's offer of reaffirmation is not deemed an attempt to collect the debt and therefore does not violate the automatic stay." *Cox v. Zale Delaware, Inc.*, 239 F.3d 910, 912 (7th Cir. 2001) (citing *In re Duke*, 79 F.3d 43 (7th Cir. 1996); *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000); *In re Brown*, 851 F.2d 81, 84 (3d Cir. 1988)). In *Cox*, the debtor listed on his petition a debt to Zale, from which he purchased a ring and Zale retained a security interest. *Id.* During the bankruptcy case, the debtor signed a reaffirmation agreement with Zale reaffirming the debt and agreeing to pay the unpaid balance of $218.93. The reaffirmation agreement was never filed with the bankruptcy court. *Id.* Years later, after the debtor had paid off the reaffirmed debt in full, he brought suit against Zale. *Id.* at 913. The debtor argued that Zale violated the automatic stay by offering a reaffirmation agreement. *Id.* The Court held that in the absence of coercion or harrasment, a creditor's solicitation of a reaffirmation agreement, is not "deemed an attempt to collect the debt and therefore does not violate the automatic stay." *Id.* at 912.

As pointed out by the Plaintiff, cases cited by the Defendant address the issue of whether soliciting a reaffirmation is an attempt to collect a debt in violation of the automatic stay. Although the cases address debt collection in the context of 11 U.S.C. § 362(a), the same reasoning applies here.

Here, Defendant submitted a reaffirmation agreement to Plaintiff's counsel. Plaintiff's counsel then forwarded the agreement to the Plaintiff. The reaffirmation agreement was prepared on court approved forms and inquired as to the Plaintiff's "intentions with respect to the collateral for [Kay Jeweler's account]." The Plaintiff does not allege that the reaffirmation agreement harassed or coerced him in any way. As stipulated by the parties, the Defendant does not attempt to collect debts by filing lawsuits in state court, operating a telephone call center or by sending out letters demanding payment to obligors on the purchased accounts.

The Bankruptcy Code provides debtors with significant protections. One fundamental protection is the automatic stay, which halts all collection efforts. A willful violation of the automatic stay justifies actual damages, including costs and attorney's fees, and in some circumstances punitive damages. 11 U.S.C. § 362(k).

The Bankruptcy Code further regulates debt collection in bankruptcy, by placing limits on the debtor's ability to enter into reaffirmation agreements. 11 U.S.C. § 524 (c)(1) - (6). 11 U.S.C. § 524(c), specifies certain requirements that must be met in order for a reaffirmation agreement to be enforceable. Among those requirements: (1) the agreement must be made before the discharge is granted. § 524(c)(1); (2) the debtor must receive "the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement." § 524(c)(2); (3) the agreement must be filed with the court and, "if applicable, accompanied by a declaration or affidavit of the attorney that represented the debtor during the course of negotiating an agreement" that states, the attorney has informed the debtor of the debtor's rights and any legal consequences, and that the agreement will not impose an undue hardship upon the debtor. § 524 (c)(3)(A) - (C); (4) the debtor must not rescind the reaffirmation agreement at any time prior to discharge or within sixty (60) days after

such agreement is filed with the court. § 524(c)(4); and (5) if the debtor was not represented by counsel during the course of negotiating an agreement, the agreement is only enforceable if the court holds a hearing and finds that the agreement does not impose an undue hardship on the debtor or a dependent of the debtor, and is in the best interest of the debtor. § 524(c)(6)(A)(i) - (ii). At the hearing, the court must advise the debtor of the various consequences of entering into a reaffirmation agreement. § 524(d). It is clear Congress drafted this section to provide significant protections to debtors in entering into reaffirmation agreements.

The Court finds that filing reaffirmation agreements are not the traditional debt collection practices which the North Carolina General assembly was trying to regulate. Classifying the solicitation of a reaffirmation agreement as a debt collection activity, would undermine 11 U.S.C. § 524(c) which permits reaffirmation agreements in bankruptcy. Section 524(c) regulates the manner in which reaffirmation agreements are solicited and entered into, thereby providing protection to the debtor. Based on the stipulated facts of this case, the Court holds that the Defendant did not engage in collection activities through its solicitation of a reaffirmation agreement for purposes of North Carolina General Statute § 58-70-1. For these same reasons, the Defendant's solicitation of a reaffirmation agreement in the Plaintiff's bankruptcy case, is not an attempt to collect a debt by the use of unfair practices within the meaning of North Carolina General Statute § 58-70-115.

The Court finds there are no triable issues of fact that would support the Plaintiff's assertions that the Defendant operates as a "collection agency" within the meaning of N.C. Gen. Stat. § 58-70-15 that must be licensed by the State of North Carolina before attempting to solicit a reaffirmation agreement. Further, the Court finds there are no triable issues of fact that would support the Plaintiff's assertion that the Defendant's solicitation of a reaffirmation agreement in the Plaintiff's

bankruptcy case is an attempt to collect a debt by the use of unfair practices within the meaning of North Carolina General Statutes §§ 58-70-115; 75-1.1.  Accordingly, the Plaintiff's motion for summary judgment is **DENIED**, and the Defendant's motion for summary judgment is **GRANTED**. The clerk is directed to enter judgment accordingly and close this adversary proceeding.

**SO ORDERED**

**END OF DOCUMENT**